PRESENT: Carrico, C.J., Lacy, Hassell, Keenan, Koontz, and
Lemons, JJ., and Stephenson, S.J.

GREGORY MICHAEL BLOOM

                                        OPINION BY
v.  Record No. 010600    SENIOR JUSTICE ROSCOE B. STEPHENSON, JR.
                                     November 2, 2001
COMMONWEALTH OF VIRGINIA


                FROM THE COURT OF APPEALS OF VIRGINIA

        The sole issue in this appeal is whether the record

supports the trial court's finding that the defendant was

sufficiently identified as the person who had made certain out-

of-court statements that constituted admissible party

admissions.

                                    I

        A jury in the Circuit Court of Roanoke County convicted

Gregory Michael Bloom of (1) attempting to take indecent

liberties with a child, in violation of Code §§ 18.2-26 and -

370(5), and (2) solicitation to commit sodomy, in violation of

Code § 18.2-29.  The jury fixed Bloom's punishment at 12 months

in jail for each offense.  Thereafter, the trial court sentenced

Bloom in accordance with the jury's verdict.

        The Court of Appeals affirmed Bloom's convictions.  Bloom

v. Commonwealth, 34 Va. App. 364, 542 S.E.2d 18 (2001).  We

awarded Bloom this appeal, limited to the previously stated

issue.

                                    II

Samantha Nicole Neff testified that, about November 1998, she began to communicate via the Internet with a person whose screen name was "Philter425." At the time, Samantha was 13 years of age; however, she told Philter425 that she was 15. According to Samantha, she and Philter425 continued to communicate via the Internet for two to three months, and the communications occurred "[m]aybe like once every other day, [or] like twice a week."

The person identified as Philter425 told Samantha that he was 28 years old, that his name was Greg, that he was originally from Ohio, and that he had a three-year-old daughter. Samantha told Philter425 that she was 5'8" tall, that she had brown hair and brown eyes, and that she was sexy. Samantha testified that, in early February 1999, Philter425 offered to buy her alcohol and to take her on dates. Philter425 also offered to give her $100 if she would sneak out of her house because, as Samantha had previously told him, she was "grounded."

Lisa Neff Akers, Samantha's mother, testified that, in early February 1999, based upon information she had received from Samantha's school, she called the police and spoke with Detective Scott Smith. Immediately thereafter, Akers went online, posing as "Nikki4403," Samantha's Internet screen name. Akers received a message from a person identified as Philter425, stating, "Hi sexy. Looking forward to Friday/Saturday." Akers,

2

as Nikki4403, responded that she would communicate with Philter425 again on the night of Friday, February 5, 1999. Akers then contacted Detective Smith.

Detective Smith testified that, based on the information he had received from Samantha and her mother, he logged onto the Internet that Friday night as Nikki4403. Shortly thereafter, Smith received an "instant message"[1] from Philter425, and the following exchange occurred via the Internet:

> Philter425: hey, baby...what's the scoop?
>
> Nikki4403: just chillin
>
> Philter425: are you un-grounded now
>
> Nikki4403: yea kinda
>
> Philter425: kinda?
>
> Nikki4403: can get out tonite
>
> Philter425: you can :o)
>
> Nikki4403: what ya have in mind
>
> Philter425: letting you meet my daughter so you can babysit tomorrow for me Philter425: :o)
>
> Philter425: or whatever you want to do
>
> Nikki4403: not babysit
>
> Nikki4403: I'm alone its cool
>
> Philter425: getting drunk and having wild monkey sex
>
> Nikki4403: sounds like a plan

---

[1] An "instant message" permits parties to communicate virtually instantaneously via the Internet. A message typed and sent appears immediately on the addressee's computer screen.

3

Philter425:  cool

Nikki4403:  what sex do you like

Philter425:  good sex

Philter425:  what do you mean

Nikki4403:  how do you like it

Philter425:  well, we'll play that part as it
             comes...I like what you said before about
             just chillin

Philter425:  is that cool?

Nikki4403:  I'm for anything but up the ass

Philter425:  ok...as long as I can lick and suck your pussy

Nikki4403:  cool

Nikki4403:  where

Philter425: you like that

Nikki4403:  oh yeah

Philter425:  here I guess

Philter425:  whereabouts are you

Philter425:  what part of vinton

Nikki4403:  Cave Spring

Philter425:  near Franklin?

Philter425:  Franklin/Ellectric?

Nikki4403:  pick me up

Philter425:  where?

Nikki4403:  garst mill park

Philter425:  never heard of it

4

```
Nikki4403:   near apartments maybe sens souci

Philter425:  tell you what...I just got home
             ...gotta shower and find a babysitter for
             real tomorrow...take a cab here (I'll pay)
             and then I'll drop you off where ever you need
             to be

Nikki4403:   i'll sneak out around 1000 want to you pick me
             up

Philter425:  but I don't know where you are talking about

Nikki4403:   Hills cave spring corner electric rd

Philter425:  I know Hills...Caves Spring and Brambleton

Philter425:  right?

Nikki4403:   aight

Nikki4403:   at payphone burger king

Philter425:  ok...what will you be wearing?

Nikki4403:   what do you want me to

Philter425:  something you...just so I can find you

Nikki4403:   blue jeans yellow jacket i'll be the cute one

Philter425:  the cute one...are you bringing someone else?

Nikki4403:   no just me

Philter425:  oh...ok...exactly what time

Nikki 4403:  1030 I got to walk what will you be in

Philter425:  Silver Tercel...just walk on up

Nikki4403:   cool cya babe

Philter425:  bye bye sweetie
```

5

Based upon this communication, Detective Smith surmised that the person identified as Philter425 would arrive at the designated place at 10:30 p.m., driving a silver Tercel automobile.  Therefore, Smith arranged to have several police officers accompany him to that location.

At 10:34 p.m., a 1992 silver Toyota Tercel entered the Burger King parking lot, paused near the unattended pay telephone, and then departed.  The officers immediately stopped the vehicle, which was driven by Bloom and registered in his name.

Detective Smith questioned Bloom about whether he had been online that evening as Philter425.  Bloom initially denied, but eventually admitted, that he had sent the messages under the screen name Philter425.

## III

Prior to trial, Bloom filed a motion in limine, seeking to prohibit the Commonwealth from introducing into evidence all statements made by Philter425 to Samantha via the Internet.  Bloom asserted that these statements "should not be admitted into evidence because there is no reliable evidence to suggest that [he] actually made the statements."

In its response to Bloom's motion in limine, the Commonwealth represented to the trial court the following:

6

Samantha Neff will testify that she posted a "profile" of personal information on [the Internet], and that sometime in November 1998 she was contacted by Philter425. She began having instant messaging conversations with Philter425 on an almost daily basis. Over time, Philter425 indicated that he was male, that his first name was Greg, that he was originally from Ohio, that he was 28 years old, that he had a young daughter, and that his home telephone number was 985-0430. [Bloom's] first name is Greg, he has a three year old daughter, he was born April 25, 1970, and his home telephone number is 985-0430.

. . . On February 1, 1999, . . . Samantha Neff had an instant messaging conversation with Philter425, during which Philter425 asked Samantha to go out on a date with him, offering money and alcohol if she would come out.

. . . The personal facts obtained by Samantha Neff over time from Philter425 match the personal information of [Bloom], who admits using the screen name Philter425 and engaging in instant messaging with Detective Smith on February 5th. These facts, plus the ongoing nature of the online relationship with [Samantha] . . . are sufficient to identify [Bloom] as the person making contact with Samantha Neff using the screen name Philter425.

Based upon these representations by the Commonwealth, which were unchallenged by Bloom, the trial court concluded that Bloom was sufficiently identified as the person who had communicated with Samantha via the Internet as Philter425. The court, therefore, overruled Bloom's motion in limine and permitted Samantha to testify to the statements made to her by Philter425 under the party-admission exception to the hearsay rule. The court aptly noted, however, that whether the statements were made by Bloom was "one of the ultimate questions to be determined by the jury."

7

Bloom contends in this appeal, as he did in the trial court and the Court of Appeals, that Samantha's testimony about statements made to her by Philter425 was inadmissible because the Commonwealth failed to show that he actually had made them. Thus, Bloom asserts, the statements were not admissible under the party-admission exception to the hearsay rule.

It is well established, as Bloom concedes, that an out-of-court statement by a criminal defendant, if relevant, is admissible as a party admission, under an exception to the rule against hearsay. See, e.g., Prince v. Commonwealth, 228 Va. 610, 613, 324 S.E.2d 660, 662 (1985); Land v. Commonwealth, 211 Va. 223, 229, 176 S.E.2d 586, 590-91 (1970). The identity of the person making the out-of-court statement may be established by either direct or circumstantial evidence. Atlantic Coast Realty Co. v. Robertson, 135 Va. 247, 261, 116 S.E. 476, 480 (1923). "The measure of the burden of proof with respect to factual questions underlying the admissibility of evidence is proof by a preponderance of the evidence." Witt v. Commonwealth, 215 Va. 670, 674, 212 S.E.2d 293, 296 (1975). The trial court determines these facts, and a jury determines the weight of the evidence and the credibility of the

witnesses.  Mullins v. Commonwealth, 113 Va. 787, 791, 75 S.E. 193, 195-96 (1912).

We think the record in the present case, when viewed in its totality, clearly supports the trial court's finding, for the purpose of the admissibility of evidence, that Bloom was the person who had made the statements to Samantha via the Internet.  Philter425 revealed that his name is Greg, which is Bloom's given name.  He told Samantha that he had a three-year-old daughter, as did Bloom.  He also told Samantha that he was 28 years of age, which was Bloom's age.  Philter425 had learned from Samantha that she had been grounded, and, when Detective Smith, posing as Nikki4403, communicated with Philter425, Philter425 began the exchange by asking whether Nikki4403 was "ungrounded."  Moreover, Philter425 agreed to meet Nikki4403 at a designated place, and Bloom appeared at that place and admitted to Smith that he had, in fact, communicated with Nikki4403 via the Internet that evening.

Bloom further contends that "[t]he flaw of the Commonwealth's argument from the post-trial perspective is that, at trial, the Commonwealth failed to sufficiently prove a nexus between the Philter425 personal facts obtained by Samantha . . . and those of [Bloom]." Continuing, Bloom asserts that "[n]o person testified at

trial as to:  [his] age . . . , whether he was from Ohio . . . , or the digits of his phone number.  The only biographical information about [Bloom] that was actually proven at trial was that he had a young daughter."

As previously stated, matters regarding the admissibility of evidence, including underlying factual issues, are solely within the province of a trial court. Mullins, 113 Va. at 791, 75 S.E. at 195-96.  We have also held that a unilateral avowal of counsel of testimony that could be presented constitutes a proper proffer, if unchallenged.  Whittaker v. Commonwealth, 217 Va. 966, 969, 234 S.E.2d 79, 81 (1977).

In the present case, the trial court, in ruling on Bloom's motion in limine, relied upon facts submitted by the Commonwealth in its response to the motion and determined that Bloom had been sufficiently identified as the person who had made certain out-of-court statements. The facts so submitted by the Commonwealth constituted an avowal of counsel of the testimony that would be relied upon at trial.  This avowal of counsel was not challenged by Bloom when the motion in limine was argued or at trial. Therefore, the trial court was entitled to rely on the unchallenged pretrial proffer in deciding the evidentiary issue, and the Commonwealth was not required to prove these

10

facts at trial to establish the admissibility of the statements.

V

In conclusion, we hold that the trial court did not err in admitting into evidence certain out-of-court statements because Bloom was sufficiently identified as the person who had made the statements via the Internet. Therefore, for the reasons stated in this opinion, we will affirm the judgment of the Court of Appeals.[2]

_Affirmed_.

---

[2] While we affirm the judgment of the Court of Appeals and conclude that its decision rests upon proper principles of law, we do not adopt its observation that "[c]onversations over the internet are analogous to telephone conversations." Bloom, 34 Va. App. at 369, 542 S.E.2d at 20. For example, in telephone conversations, unlike communications via the Internet, the participants have the opportunity for voice recognition.

11