COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Frank and Humphreys
Argued at Chesapeake, Virginia


JAMAAL SAMUEL WYCHE

MEMORANDUM OPINION[*] BY
v.      Record No. 1934-11-1                   JUDGE ROBERT P. FRANK
JULY 10, 2012

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Wilford Taylor, Jr., Judge

Charles E. Haden for appellant.

Alice T. Armstrong, Assistant Attorney General II (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Jamaal Samuel Wyche, appellant, was convicted by a jury of two counts of malicious

wounding in violation of Code § 18.2-51, two counts of use of a firearm in the commission of a

felony in violation of Code § 18.2-53.1, and two counts of shooting from a motor vehicle in

violation of Code § 18.2-286.1.  On appeal, he argues the trial court erred in permitting an expert

witness to testify about gang practices and terminology, including appellant's involvement with a

gang.  For the reasons stated, we affirm the judgment of the trial court.

BACKGROUND

On the afternoon of January 21, 2010, a group of high school students was walking on a

Hampton street when a passenger in a black SUV opened fire on them.  Two of the group were

wounded by the gunfire.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Immediately prior to the gunshots, someone in the SUV shouted, "What's crackin' now?" The victims could not identify the shooter, but both indicated the shooter wore a red bandana. Kashawn Cummings, a witness, testified that the "person who rolled down the window who was shooting" was the person who said "What's crackin'?"

Marquise Hassell, the driver of the SUV, testified appellant was the person who shot from the SUV. Tyron Parks, one of the victims, had earlier robbed Hassell at gunpoint. On the day of the shooting, Hassell observed Parks walking down the street and intended to stop and engage him in a fight, not shoot him. Hassell testified Tyron was a "249 Crip." Hassell also testified that appellant was the only person in the SUV wearing a red bandana.

The Commonwealth called Hampton Police Detective Corey Sales to testify as an expert in gang ideology. Appellant objected to Sales' testimony concerning gang activities because the pending charges did not involve gang participation. The following exchange occurred:

> [DEFENSE COUNSEL]: But anyway, I think that if – if he is asked concerning the significance of – of a red bandana, um, that that would be permissible, because that has come up in the testimony.
>
> The other thing would – let's see – oh, the phrase –
>
> [COMMONWEALTH ATTORNEY]: "What's crackin'?"
>
> [DEFENSE COUNSEL]: "Get crackin'," if he can – if that shows significance to him as a gang expert by the saying of that phrase.
>
> And I think that that should be limited to those two things and not have any greater, um, testimony before this panel, because it's surely not relevant outside of that.
>
> THE COURT: All right. The Commonwealth's response.
>
> [COMMONWEALTH ATTORNEY]: Judge, that's essentially – and I'll just proffer the evidence to you – that's essentially what I'm going to be asking Detective Sales to testify to, about what the meaning of "What's crackin'?" and what the meaning of somebody –
>
> THE COURT: He's not objecting to that.

The trial court qualified Detective Sales as an expert in gang ideology and identification. Sales testified that Crips wear blue and Bloods wear red, black or green. These colors are typically present in a "flag" or bandana and identify the individual as a member of a particular gang. Sales further explained that the phrase "What's crackin'?" is a Crips greeting, yet if that phrase is used by a Blood to a Crip, it would be considered disrespectful, prompting some type of "altercation."

One of Sales' responsibilities is to monitor "MySpace"[1] for gang intelligence. In that capacity, he downloaded two photographs from MySpace in 2008. One photo depicts Kenny Jarvis, also known as "Killer," displaying a hand sign indicating his involvement in Nine Trey, a Blood street gang that originated in New York. Standing behind Jarvis is appellant, wearing a "black skully" and a "red do-rag."

Appellant appears in the other photograph with Kenny Jarvis and "Qwan." In that photo, Jarvis is wearing red beads around his neck, another "flag" indicating he is a Blood. Appellant is wearing a "red do-rag."

Sales testified he had no knowledge appellant was a Blood, but explained that appellant always associated with members of the Bloods. The detective testified Tyron Parks, a victim, was a "249 Phoebus Crip."

After the Commonwealth rested, appellant renewed his objections "to the discussion and expanded testimony of Detective Sales" based on relevancy because appellant was not charged with any gang-related offenses. The trial court admitted the two photographs over appellant's objections. The jury convicted appellant of all counts.

This appeal follows.

---

[1] MySpace is a web-based social networking service.

ANALYSIS

On appeal, appellant contends the trial court erred in permitting Sales to testify about gang practices and terminology. Specifically, he complains of Sales' testimony as to the meaning of red bandanas, the phrase "What's crackin'?", and appellant's association with Blood gang members.[2] He claims the prejudicial effect of that testimony far outweighs its probative value. His entire assignment of error is premised on his argument that any evidence of gang involvement is irrelevant because appellant was not charged with gang-related offenses.

We first note that in his brief, appellant argues evidence of other crimes is inadmissible. However, this issue is not presented in the assignment of error on brief and was not included as part of the assignment of error on which this appeal was granted at the petition stage. Rule 5A:12(c)(1) provides that "the petition shall list . . . the specific errors in the rulings below upon which the party intends to rely" and that "[o]nly assignments of error assigned in the petition for appeal will be noticed by this Court." The purpose of the rule is to require a party "'to point out the errors . . . on which [an] appellant intends to ask a reversal of the judgment, *and to limit discussion to these points*.'" Envtl. Staffing Acquisition Corp. v. B & R Constr. Mgmt., Inc., 283 Va. 787, 792, 725 S.E.2d 550, 553 (2012) (emphasis added) (quoting Yeatts v. Murray, 249 Va. 285, 290, 455 S.E.2d 18, 21 (1995)) (discussing similar "assignment of error" language in Rule 5:17(c)(1)(iii), applicable to appeals to the Supreme Court). Thus, to the extent appellant attempts to raise an other-crimes argument separate from his challenge to the admissibility of the

---

[2] The assignment of error states:

> The trial court erred in permitting Detective Corey Sales to testify about gang practices and terminology, including the fact that red bandannas and the term "What's crackin'" were often employed by Bloods gang members and that Jamaal Wyche "associated" with Bloods gang members, where the prejudicial effect of such information far outweighed its probative value.

gang evidence, we lack authority to consider that argument on appeal.  Cf. Cruz v. Commonwealth, 12 Va. App. 661, 664 n.1, 406 S.E.2d 406, 407 n.1 (1991) (decided under former rules, which required questions presented rather than assignments of error, and declining to consider issue on which "no appeal was granted").

Appellant has challenged the court's ruling allowing Sales to testify as to the significance of red bandanas and the phrase "What's crackin'?"  Yet at trial, appellant agreed that testimony was admissible.  In fact, he said Sales' testimony should be limited to those two points.  The exchange between the Commonwealth's attorney and defense counsel addressed the admissibility of the two MySpace photographs, not the red bandana and phrase "What's crackin'?"

The principle is long standing in Virginia that an appellate court will not "notice error which has been invited by the party seeking to take advantage thereof on appeal."  Saunders v. Commonwealth, 211 Va. 399, 400, 177 S.E.2d 637, 638 (1970).  Stated differently,

> even if we were to assume that the court's ruling was technically erroneous, . . . [the appellant] is barred from invoking it on appeal. No litigant, even a defendant in a criminal case, will be permitted to approbate and reprobate — to invite error, as the defense admittedly did here, and then to take advantage of the situation created by his own wrong.

Fisher v. Commonwealth, 236 Va. 403, 417, 374 S.E.2d 46, 54 (1988).

Appellant maintains Sales' testimony as to gang affiliation, the only issue properly before us, is inadmissible because the prejudicial effect of that testimony outweighs its probative value. Essentially, he argues that evidence of gang activity would tend to arouse the jury's hostility.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion."  Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988).  However, "[b]y definition, when the trial court makes an error of law, an abuse of discretion occurs."  Bass v.

- 5 -

Commonwealth, 31 Va. App. 373, 382, 523 S.E.2d 534, 539 (2000). The proponent of the evidence bears the burden of establishing, by a preponderance of the evidence, the facts necessary to support its admissibility. Bloom v. Commonwealth, 262 Va. 814, 821, 554 S.E.2d 84, 87 (2001).

Relevant evidence should be excluded if the prejudicial effect of admitting it outweighs its probative value. Evans-Smith v. Commonwealth, 5 Va. App. 188, 196, 361 S.E.2d 436, 441 (1987). "The fact that some prejudice may result does not justify automatic exclusion." Id. Indeed, "[a]ll evidence tending to prove guilt is prejudicial to an accused." Powell v. Commonwealth, 267 Va. 107, 141, 590 S.E.2d 537, 558 (2004). "Virginia law . . . intervenes only when the alleged prejudice tends to inflame irrational emotions or leads to illegitimate inferences." Thomas v. Commonwealth, 44 Va. App. 741, 758, 607 S.E.2d 738, 746, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005).

Here, the trial court reasonably concluded that the probative value of Sales' testimony outweighed any prejudicial effect. Clearly this evidence was relevant to prove the identity of the shooter. The victims testified the shooter shouted "What's crackin'?" and wore a red bandana. Hassell testified appellant wore a red bandana and fired the shot from the vehicle, yet neither of the victims could identify the shooter.

It must be remembered that the jury heard other evidence of appellant's involvement with gang activity. Hassell testified without objection that appellant associates with gang members. The jury viewed photographs depicting appellant, wearing red "flags," posing with an individual displaying hand signs denoting his involvement with a Blood street gang. Sales testified to the meaning of the phrase "What's crackin'?" and the significance of red bandanas. Additionally, JordanWarner acknowledged that "What's crackin'?" has "something to do" with gangs. Under

these circumstances, it is inconceivable that the challenged portion of Sales' testimony had any prejudicial effect on the jury.

We cannot say the trial court abused its discretion in admitting Sales' testimony as to gang affiliation because such testimony was probative as to appellant's identity and merely cumulative of what the jury already heard from other testimony and exhibits.

CONCLUSION

For the foregoing reasons, we hold the trial court did not err in permitting an expert witness to testify about gang practices and terminology, including appellant's involvement with a gang. Therefore, the judgment of the trial court is affirmed.

Affirmed.