COURT OF APPEALS OF VIRGINIA

Present:   Judges Decker, Malveaux and Senior Judge Clements
Argued at Richmond, Virginia

UNPUBLISHED

THOMAS BARTHOLOMEW SIMPSON

v.      Record No. 0311-16-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE MARY BENNETT MALVEAUX
NOVEMBER 21, 2017

FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
Sarah L. Deneke, Judge

Rebecca M. Favret (Spencer, Meyer, Koch & Cornick, PLC; Bowen,
Shah & Clements, PLLC, on briefs), for appellant.

Christopher P. Schandevel, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Thomas Bartholomew Simpson ("appellant") was convicted by a jury of armed statutory

burglary, in violation of Code § 18.2-91, entering the home of a person protected by a protective

order, in violation of Code § 16.1-253.2, and assault and battery, in violation of Code § 18.2-57.[1]

On appeal, he argues that the trial court erred when it admitted certain evidence—specifically,

portions of a recorded 911 call containing a child's statement audible in the background and

screenshot images of text messages.  For the reasons that follow, we affirm the judgment of the

trial court.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant was indicted for malicious wounding, in violation of Code § 18.2-51, but
convicted of the lesser-included offense of assault and battery.

# I. BACKGROUND

"In accordance with familiar principles of appellate review, the facts [are] stated in the light most favorable to the Commonwealth, the prevailing party at trial." Scott v. Commonwealth, 292 Va. 380, 381, 789 S.E.2d 608, 608 (2016) (citation omitted).

Appellant and Erica Simpson ("Simpson") married and had two children, J. and Z. In March 2014, after several years of marriage, the couple separated. After appellant moved out of the family home, he began sending threatening text messages to Simpson. Simpson took screenshots of many of the messages and uploaded them to her computer, and on April 2, 2015, she obtained a protective order against appellant.

Three weeks later, during the early hours of April 23, Simpson and her boyfriend, Javelle Rowe, were asleep in Simpson's home. They were in the master bedroom with the door locked. J. and Z., who were three and four years old, respectively, were asleep in their bedrooms across the hall. Before going to bed, Simpson had checked to see that the house was secured and the doors were locked. She had left a small table light burning to provide some illumination for the hallway between the bedrooms.

At approximately 1:30 a.m., Simpson and Rowe awoke to the sound of shattering glass. A few seconds later, they heard footsteps coming down the hall. Simpson ran into the suite bathroom while Rowe went to the bedroom door. Simpson heard a "banging sound" coming from the bedroom door, "[t]he sound it makes when someone hits it or kicks it." Rowe positioned himself against the door to prevent anyone from entering.

Simpson left the bathroom and returned to the bedroom to get her phone. She yelled that she was going to call the police and began dialing 911. Simpson could see Rowe trying to keep the door closed, but the intruder had managed to get a hand and arm inside the door. The

intruder was swinging a pipe, and Rowe felt himself being struck on the wrist and head with "a hard metal type of object, . . . just coming down on me very forceful."

About that time, Simpson heard appellant speak to Rowe. Asked at trial how certain she was that the voice she heard was appellant's, Simpson replied that she was very certain. Simpson also testified that she heard appellant say "it's okay, [J.]," when "[J.] said [']daddy['] in the hallway." Asked whether J. said anything in return, or whether any of her children said anything, Simpson replied that "[t]hey said [']daddy.[']" Rowe testified at trial that he heard a male voice, but did not recognize the speaker and was not sufficiently familiar with appellant to identify his voice. He heard the male "in conversation" with J. and Z., and noted that the children were "very calm. They were comfortable with whom they were [speaking]."

The intruder stopped hitting Rowe at about the time Rowe heard J. and Z. speaking with someone. A few moments later, Rowe opened the bedroom door and Simpson was able to go out and check on her children. In the kitchen, Simpson discovered broken window panes in the exterior door and fragments of glass scattered across the floor.

At approximately 2:00 a.m., appellant knocked on the door of a cousin who lived near Simpson's home. He told her that his mother's car was "acting up, like it was going to break down," and asked if he could sleep on her couch. She agreed to let him do so. Shortly before 2:30 a.m., First Sergeant Woodard from the Spotsylvania County Sheriff's Office arrived near the cousin's townhouse. Woodard located a car suspected to be involved in the incident at Simpson's home, a red Toyota Corolla, and inspected the area around it. Woodard found a shard of glass beside the vehicle. He also touched the Corolla's hood, and although other vehicles in the area were cold to the touch, the Corolla was warm. The car was towed to the sheriff's office and released a few hours later to its registered owner, appellant's mother. A detective testified at

- 3 -

trial that in releasing the vehicle, he was able to drive it out of the sheriff's compound without difficulty.

Over appellant's objection, a portion of the recording of Simpson's 911 call was entered into evidence at trial. During the call, Simpson tells the 911 operator that appellant broke into her house and she thinks he is still inside. The operator tells Simpson to try and get her children, but Simpson says, "[n]o, I can hear him. I'm not going out there, I can hear him talking." A few seconds later, Simpson tells the operator, "I can hear my kids." After a few more seconds, a voice in the background says "daddy." Appellant filed motions *in limine* to exclude the recording of Simpson's 911 call and prohibit the introduction of Simpson's screenshots.

<u>Motions to Exclude</u>

Appellant's first motion *in limine* sought the exclusion of the entirety of the recorded 911 call. With respect to the statement "daddy," audible in the background of the recording, appellant argued at the motion hearing that the statement constituted hearsay on the question of the intruder's identity. Appellant further argued that the statement would prove inherently prejudicial and tend to mislead the trier of fact, because there was no reliable way to ascertain what "daddy" meant.

The trial court granted the motion in part and denied it in part. It found that the first portion of the recording was admissible as Simpson's present sense impression of events during the break-in. The court reserved judgment on the precise point at which the recording would be truncated for admission, but noted that if the child's statement was within the admissible portion, "then it will come in because it is a part of the recording . . . . [T]here would be no way to exclude [it] . . . , so if it is in the portion . . . that I determine is still part of the [present sense impression], then it will be admissible." In a subsequent opinion letter, the court ruled that

approximately the first three minutes and seven seconds of the recording would be admissible, but did not specifically address whether the child's statement was hearsay.

Appellant's second motion *in limine* sought to exclude Simpson's screenshots. Appellant argued that the messages reflected in the screenshots were too vague and remote in time to be relevant and would prove more prejudicial than probative. He further contended that there was insufficient evidence that appellant was the author of the messages, and suggested that screenshots are easily manipulated. At a hearing on the motion, the trial court concluded that it lacked sufficient information to make admissibility determinations at that time. It reserved judgment on the matter, stating it would have to hear the testimony at trial and consider each screenshot as it was offered by the Commonwealth.

Relevant Proceedings at Trial

At the outset of trial, appellant moved the court to reconsider its ruling on the admissibility of the 911 recording and specifically asked that any statement by the child be deemed inadmissible. The court denied the motion, stating that

> the exclamation of a child in the background of a 9-1-1 call is not something that I can exclude from the 9-1-1 call. It's, it is part of what is occurring at the time, it is part of, whether it's the excited utterance or the present sense impression of the caller, it is all taking part at the same time and what its meaning is is a matter for the jury to determine.

During trial, appellant objected to the admission of various sets of screenshots based on foundation, remoteness in time, and prejudice. The first set, which included text messages from April 2014, was ruled inadmissible because the messages predated the home invasion by approximately a year and were found too remote in time to be relevant.

A second set of screenshots, from September 2014, was ruled admissible. Simpson identified references in the messages to "our children," the fact that both children were male, the names of appellant's sister and her boyfriend, and the name of appellant's cousin. Based on

Simpson's testimony, the court concluded the messages were tied to specific dates and contained specific threats relevant to the case before it and that even though they were sent several months before the incident, Simpson adequately identified the messages as coming from appellant.

Appellant objected to three additional sets of screenshots, all from November 2014. Two sets were ruled inadmissible, the first because the messages were too inflammatory and contained threats that went beyond issues of motive or intent, and the second because their content lacked sufficient specificity to connect them to the incident at issue. The third set was admitted after the trial court determined that the messages contained specific threats to Simpson based on the parties' legal conflicts.

Appellant objected to a final set of screenshots from February 2015. In ruling that the screenshots were admissible, the trial court concluded that the threats contained in the messages were sufficiently specific and their sexual content was important for identifying the source of the text messages.

The jury convicted appellant of armed statutory burglary, in violation of Code § 18.2-91, entering the home of a person protected by a protective order, in violation of Code § 16.1-253.2, and assault and battery, in violation of Code § 18.2-57. This appeal followed.

## II. ANALYSIS

On appeal, appellant contends that the trial court erred when it admitted both a portion of Simpson's recorded 911 call and a series of screenshots depicting text messages received by Simpson.

"It is well established that 'the admissibility of evidence is within the discretion of the trial court' and an appellate court will not reject the decision of the trial court unless it finds an abuse of discretion." Hicks v. Commonwealth, 60 Va. App. 237, 244, 725 S.E.2d 748, 752 (2012) (quoting Midkiff v. Commonwealth, 280 Va. 216, 219, 694 S.E.2d 576, 578 (2010)). "A

'trial judge's ruling will not be reversed simply because an appellate court disagrees. Only when reasonable jurists could not differ can we say an abuse of discretion has occurred.'" Id. at 245, 725 S.E.2d at 752 (quoting Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005)). "On appeal, '[t]he burden is on appellant to show that the trial court's admission of evidence constitutes reversible error.'" Pope v. Commonwealth, 60 Va. App. 486, 517, 729 S.E.2d 751, 766 (2012) (quoting Dunn v. Commonwealth, 20 Va. App. 217, 220, 456 S.E.2d 135, 136 (1995)).

A. The 911 Recording

Appellant argues that the trial court erred when it admitted that portion of the recorded 911 call which contains a child's statement in the background because the statement was hearsay. Assuming without deciding that the child's statement audible in the 911 recording was inadmissible hearsay, we conclude that any error in admitting such hearsay was harmless.

As appellant alleges an evidentiary error, we conduct our inquiry under the standard for non-constitutional harmless error. Under that standard, any error is harmless "[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678; see also Shifflett v. Commonwealth, 289 Va. 10, 12, 766 S.E.2d 906, 908 (2015) (quoting Code § 8.01-678 and noting that under such circumstances, "no judgment shall be arrested or reversed . . . for any error committed on the trial"). "An error is harmless 'if "other evidence of guilt is so overwhelming and the error so insignificant by comparison that the error could not have affected the verdict," or "even if the evidence of the defendant's guilt is not overwhelming, . . . if the evidence admitted in error was merely cumulative of other, undisputed evidence."'" Salahuddin v. Commonwealth, 67 Va. App. 190, 212, 795 S.E.2d 472, 483 (2017) (quoting McLean v. Commonwealth, 32 Va. App. 200, 211, 527 S.E.2d 443, 448 (2000)). See also Greenway v.

Commonwealth, 254 Va. 147, 154, 487 S.E.2d 224, 228 (1997) ("Improper admission of evidence does not create reversible error when it is merely cumulative of other competent evidence properly admitted." (citation omitted)); Bynum v. Commonwealth, 57 Va. App. 487, 494, 704 S.E.2d 131, 135 (2011) ("Even though testimony is objectionable as hearsay, its admission is harmless error when the content of the extra-judicial declaration is clearly established by other competent evidence." (quoting Schindel v. Commonwealth, 219 Va. 814, 817, 252 S.E.2d 302, 304 (1979))). "Cumulative testimony is repetitive testimony that restates what has been said already and adds nothing to it. It is testimony of the same kind and character as that already given." Commonwealth v. Proffitt, 292 Va. 626, 640-41, 792 S.E.2d 3, 10 (2016) (quoting Massey v. Commonwealth, 230 Va. 436, 442, 337 S.E.2d 754, 758 (1985)).

At trial, the jury listened to the admitted portion of Simpson's recorded 911 call which included the child's statement, "daddy," audible in the background. Immediately after the jury listened to the recording, Simpson testified that she heard appellant speak to their son "when [J.] said [']daddy['] in the hallway." She further testified that after the intruder spoke to J., her children "said [']daddy.[']" Thus, the recorded child's statement, if erroneously admitted, was merely cumulative of Simpson's testimony that a child said "daddy" during the home invasion.

However, appellant contends that the recorded statement was not merely cumulative because "[t]he recording, like a photograph, displayed exactly what occurred. . . . Simpson's testimony was both her description and her perception of what occurred." Further, "[s]imilar to a photograph having a greater impact than a verbal description of a crime scene, the effect of hearing the . . . recording and the statement of the child itself undoubtedly had a greater effect than . . . Simpson's testimony." Consequently, the child's statement audible on the recorded 911 call would not have been "viewed [by the jury] through the same lens" as Simpson's testimony.

Appellant misconstrues the nature of Simpson's testimony. Simpson's statements that she heard a child say "daddy" were purely descriptive and free of editorializing based upon her subjective perception of events. Her testimony simply restated the evidence provided by that portion of her recorded 911 call which made clear that a child stated "daddy," and added nothing to that evidence. See Proffitt, 292 Va. at 640-41, 792 S.E.2d at 10. The question of what impact or effect the recorded statement may have had upon the jury, relative to the impact or effect of Simpson's testimony, speaks not to the relevant question here, which is simply whether the evidence provided by the two sources was the same. Instead, it speaks to the weight to be afforded evidence from different sources and the credibility to be attributed to witnesses— matters which are well-established in our jurisprudence as legitimate and exclusive considerations for the jury. See, e.g., Gilliam v. Immel, 293 Va. 18, 24, 795 S.E.2d 458, 461 (2017) (noting that the "jury are the sole judges of the weight and credibility of the evidence" (quoting Smith v. Wright, 207 Va. 482, 486, 151 S.E.2d 359, 363 (1966))); Creamer v. Commonwealth, 64 Va. App. 185, 204, 767 S.E.2d 226, 235 (2015) (noting that the trier of fact determines witness credibility and weight to be afforded testimony). Therefore, the statement audible in the background of the 911 recording, which indicated that a child said "daddy" during the home invasion, was merely cumulative of Simpson's independent testimony on the same point. As such, any error in admitting that recorded statement into evidence was harmless.[2]

---

[2] Appellant also argues that the child's statement was more prejudicial than probative and had a tendency to mislead the jury. However, as noted above, even assuming without deciding that the child's statement was erroneously admitted, that statement was merely cumulative of additional, undisputed evidence presented at trial. As the record reflects that the parties had a fair trial on the merits and substantial justice was reached, any error in admitting the child's statement was harmless. See Code § 8.01-678.

B.  The Screenshots of Text Messages

Appellant argues that the trial court erred in admitting screenshots of text messages received by Simpson because they lacked proper foundation, were irrelevant, and were more prejudicial than probative.  We disagree.

With respect to foundation, appellant maintains that the Commonwealth failed to establish the reliability of the screenshots through Simpson's testimony, and also failed to establish that appellant sent the messages documented in the screenshots.[3]  "The measure of the burden of proof with respect to factual questions underlying the admissibility of evidence is proof by a preponderance of the evidence."  Atkins v. Commonwealth, 68 Va. App. 1, 9, 800 S.E.2d 827, 831 (2017) (quoting Bloom v. Commonwealth, 262 Va. 814, 821, 554 S.E.2d 84, 87 (2001)).  "Although the type of evidence used to prove the identity of the person making the statement may vary based in part upon the medium used to convey the message, the governing legal standard is the same—proof by a preponderance of direct evidence, circumstantial evidence, or a combination of both."  Id. (citations omitted).  "Further, it is well established that '[t]he completeness of the identification goes to the weight' afforded 'the evidence rather than its admissibility,' with the responsibility of determining the threshold question of admissibility resting with the trial court."  Id. (quoting Armes v. Commonwealth, 3 Va. App. 189, 193, 349 S.E.2d 150, 153 (1986)).

---

[3] Appellant offers a series of inapposite cases to support his argument that the Commonwealth did not adequately authenticate the screenshots by establishing their reliability.  Specifically, the cases he provides address computer-generated telephone company records.  See Godoy v. Commonwealth, 62 Va. App. 113, 742 S.E.2d 407 (2013) (records offered under business records exception to the hearsay rule); Chewning v. Commonwealth, No. 2204-12-4, 2014 Va. App. LEXIS 82 (Va. Ct. App. Mar. 11, 2014) (same); Penny v. Commonwealth, 6 Va. App. 494, 370 S.E.2d 314 (1988) (same).  Here, appellant raised no hearsay objections to the screenshots.  Thus, his cited cases, involving computer-generated, third-party records which were offered as business records to overcome hearsay objections, have no bearing on the instant case.

Here, Simpson testified that she received the screenshots, and she testified about the means she used to save and preserve them. She also testified about the extensive personal details contained in the text messages, which convinced her that appellant was their author. Appellant offered no evidence at the motion hearing or at trial that Simpson had in any way fabricated or manipulated the screenshots or the underlying text messages. The trial court found the Commonwealth's evidence persuasive, and concluded it had met its burden of proving the authenticity of three sets of screenshots by a preponderance of the evidence. The court properly admitted those screenshots, and properly left questions of their evidentiary weight to the jury. Appellant's arguments on appeal fail to demonstrate an abuse of discretion by the trial court in finding there was an adequate foundation for admission of the screenshots.

Appellant also argues that the text messages in the screenshots include statements irrelevant to the charged offenses and were too remote in time to be relevant. He further maintains that the probative value of the screenshot evidence was marginal and far outweighed by its prejudicial potential and that the violent and sexual content of some of the messages was inflammatory.

"Under Virginia Rule of Evidence 2:401, '"[r]elevant evidence" means evidence having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence.'" Proffitt, 292 Va. at 634, 792 S.E.2d at 6. "The scope of relevant evidence in Virginia is quite broad, as '[e]very fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue is relevant.'" Id. at 634, 792 S.E.2d at 6-7 (quoting Virginia Elec. & Power Co. v. Dungee, 258 Va. 235, 260, 520 S.E.2d 164, 179 (1999)). "The Commonwealth bears the burden of proving [relevance] by clear and convincing evidence." Id. at 635, 792 S.E.2d at 7 (citations omitted). Further, the trial court may consider remoteness in time as a factor in determining evidentiary relevance, "but it should

not withhold such evidence solely on the basis of remoteness unless the expanse of time has truly obliterated all probative value. This determination is committed to the sound discretion of the trial court." Lafon v. Commonwealth, 17 Va. App. 411, 419, 438 S.E.2d 279, 284 (1993), cited with approval in Summerlin v. Commonwealth, 37 Va. App. 268, 293-94, 557 S.E.2d 731, 734 (2002).

However, while all relevant evidence generally is admissible, Va. R. Evid. 2:402, "[r]elevant evidence may be excluded if . . . the probative value of the evidence is substantially outweighed by . . . the danger of unfair prejudice," Va. R. Evid. 2:403(a)(i). "It is well-settled that '[t]he responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court.'" Proffitt, 292 Va. at 635, 792 S.E.2d at 7 (quoting Ortiz v. Commonwealth, 276 Va. 705, 715, 667 S.E.2d 751, 757-58 (2008)). "When balancing these considerations, it is of course true that 'all probative direct evidence generally has a prejudicial effect to the opposing party.' Thus, the relevant question is 'whether the probative value of the evidence is substantially outweighed by its unfair or unduly prejudicial effects.'" Id. at 635-36, 792 S.E.2d at 7 (quoting Lee v. Spoden, 290 Va. 235, 251-52, 776 S.E.2d 798, 806-07 (2015)).

Here, the trial court exercised its discretion by carefully weighing the probative value of each set of text messages and balancing that probative value against any potentially prejudicial effects. The court excluded the oldest screenshots, concluding that the messages they contained were too remote in time to be relevant. Others were found too inflammatory based on the extreme nature of the threats they contained. The court admitted only those screenshots which contained "specific threats and specific dates" tied to Simpson, "specific threats" based upon the couple's "legal activity . . . going on at the time," and further specific threats directed at Simpson. The text messages contained in the admitted screenshots were relevant to proving the

intent, malice, motive, and identity of the intruder, all of which were at issue in the instant case. While appellant correctly points out that some of the messages contained in the screenshots were prejudicial, nothing in the record demonstrates that any prejudice outweighed their probative value.

After considering appellant's arguments regarding Simpson's screenshots, we conclude that the trial court carefully evaluated the admissibility of each set of screenshots and did not abuse its discretion in admitting them into evidence.

### III. CONCLUSION

For the foregoing reasons, we conclude that the trial court did not err in admitting the portion of the 911 recording in which a child's statement is audible in the background. We also conclude the trial court did not err in admitting screenshots of text messages received by Simpson. Thus, we affirm the judgment of the trial court.

Affirmed.