UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges AtLee, Friedman and Raphael
Argued at Lexington, Virginia


SAMANTHA LEIGH PERRY

                                                MEMORANDUM OPINION* BY
v.        Record No. 0877-21-3                  JUDGE RICHARD Y. ATLEE, JR.
                                                     SEPTEMBER 13, 2022

COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY
                         Christopher B. Russell, Judge

        Michelle C.F. Derrico, Senior Assistant Public Defender (Tyler M.
        Jerrell, Assistant Public Defender; Virginia Indigent Defense
        Commission, on briefs), for appellant.

        Stephen J. Sovinsky, Assistant Attorney General (Jason S. Miyares,
        Attorney General, on brief), for appellee.


        Appellant Samantha Leigh Perry appeals the decision of the Circuit Court of Rockbridge

County ("trial court") to revoke her previously suspended sentence and impose sixty days'

incarceration.  Perry contends that the trial court erred when it admitted "hearsay evidence of a

social media post which lacked proper foundation[,] in violation of Ms. Perry's limited rights of

confrontation at a revocation hearing."  She also argues that the trial court erred when it found good

cause to revoke her sentence.  For the following reasons, we disagree and affirm the trial court's

decision.

                                    I.  BACKGROUND

        "Under well-settled principles of appellate review, we consider the evidence presented at

trial in the light most favorable to the Commonwealth, the prevailing party below."  *Vay v.*

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

*Commonwealth*, 67 Va. App. 236, 242 (2017) (quoting *Smallwood v. Commonwealth*, 278 Va. 625, 629 (2009)). "This principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Id.* (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)).

On August 7, 2020, the General District Court of Rockbridge County convicted Perry of disorderly conduct. The conviction related to an altercation between Perry and Darian Camp, the mother of Perry's boyfriend's daughter, outside Camp's home. The court sentenced Perry to sixty days' incarceration and a fine, both of which were suspended on the conditions that Perry be of good behavior and have no contact with Camp.

On February 11, 2021, the Commonwealth filed a motion to show cause, alleging that Perry had violated the no contact order. The Commonwealth alleged that between February 1, 2021, and February 6, 2021, Perry had posted "social media diatribes referencing a female that shared a child with her lover and that caused her to be convicted of disorderly conduct." The Commonwealth stated that Camp is the female described in the social media posts and the posts addressed her as "you" and "your," which violated the court's no contact order.

At the revocation hearing on August 11, 2021, Camp testified that Perry was in a relationship with the father of Camp's four-year-old daughter. She testified that she is familiar with Perry's Facebook account and that Perry identifies herself by her maiden name, Samantha Miller, on Facebook. Camp also testified that the Samantha Miller Facebook page contained photos of Perry, Perry's daughter, and Perry's family. She noted that the account was "very active."

Camp testified that someone took "screenshots" of posts that appeared on Samantha Miller's page and sent them to Camp. Camp explained that these posts contained "really personal details of [Camp's] life," including references to Perry's disorderly conduct conviction and the altercation

- 2 -

with Camp leading to the conviction; "the mother of my boyfriend's children," which could only be Camp; and child custody issues between Camp and Perry's boyfriend, the father of Camp's child.

At multiple points throughout the trial, Perry objected to the introduction of the Facebook posts on foundation, hearsay, and confrontation grounds. The trial court overruled the objections. Camp read the posts during her testimony, and the screenshots of the posts were admitted as exhibits.

The first post stated the following:

> ALL THESE FAKE ACCOUNTS & LIES, BUT WHERE YALL AT THOUGH?? PRETTY SURE THE LAST TIME I PULLED UP AT YOUR HOUSE, AFTER YOU HAD MESSAGED ME RUNNING THAT ROTTEN MOUTH, YOU CALLED THE POLICE 😟😕😑 OH, AND SCREAMED FOR YOUR NEIGHBORS!! I TOOK THAT DISORDERLY CONDUCT CHARGE PROUDLY!! BET THAT WAS THE MOST ACTION/SCREAMING YOU HAVE GOTTEN IN YEARS! BECAUSE IF THEY ARENT MARRIED, IN LAW ENFORCEMENT, YOU DONT PURSUE THEM! 😬😬 THEN WHEN YOU DID, HE NEVER CAME BACK! THATS WHY YOURE STUCK WITH TWO DIFFERENT FATHERS OF YOUR KIDS!!! THAT & YOU ARE AN INSANE ALCOHOLIC LIKE YOUR CHAIN SMOKIN MAMA!! 🖐 COME OUT, COME OUT....WHERE EVER YOU ARE.... 🙉😬 I ALSO WONDER IF THIS IS WHAT YOU LOOK LIKE WITH NO TEETH/ROTTEN TEETH 😬😬😬😺😺 clown ass BITCHES! 😕😬

A second post stated:

> You can send messages to my daughter all you want, you sick a** f*** b**** you can message our family. Do whatever you need to! I promise your day is coming. You're nothing but a COWARD!!!!! It's been how many months now?! Hell, years! Jealously kills doesn't it?!! And you have EVERY SINGLE RIGHT TO BE!!!!! You're now attacking my daughter!!! You're FUCKING with the wrong mom!! COME AT ME!!!!!!! Stop hiding, you already have one nasty P****, don't be one!!!!!! And if YOU ARE GOING TO MAKE UP LIES! THINKING YOU ARE MESSAGING MY DAUGHTERS "DAD", MAKE SURE ITS HIM BITCH, NOT HIS BROTHER CRAIG PERRY!!! IM GOING TO SAY THIS AND IDGAF WHO LIKES IT!!! YALL ARE BULLIES!! SEVERELY PISSED BC JOSH LOVES MY KIDS AND DOESNT WANT

SHIT TO DO WITH THE ONE HE MADE WITH THAT BITCH!!! NOT BY CHOICE! BECAUSE YALL MADE HIM THAT WAY!!!!! SUCK IT UP BUTTERCUP 👌 👌 AND ANYONE WHO DISAGREES CAN FUCKING KICK ROCKS!!! 👋 👋 👋 👋 👋 👋 👋 when your daughter gets old enough to know the truth!! You can tell her you kept her from her dad because you're so jealous of his new girlfriend & FAMILY!!!! Meaning US bitch!!! She will look at you as the evil bitch you are!!! I hope this gets ss [screenshot][1] and sent to the right fucking people! Kiss OUR ASSES!! I'm TIRED OF DEALING WITH IT!! YOU WANT MY LIFE SO BAD, COME GET IT BITCH! ILL MAKE SURE YOU END UP ON A VENTILATOR WITH A 2% SURVIVAL RATE. MAKE YA FAMILY CALL IN HOSPICE BITCH!! Run and tell that!!!!!! 👋 today I'm bringing myself out of my own character! I'm sick of the bullshit!! Come at me! I'm begging you! You'll never be shit!! Can't beat educated bitch!!!! But I'll sound and act very uneducated when need be!!![2]

Camp explained that after she received the screenshots of these posts, she went to Perry's Facebook page and viewed the posts there. During Camp's testimony, the trial court took judicial notice of the fact that it is possible to create a fake Facebook account with someone else's name and photo.

The trial court found that Camp was a credible witness. It concluded that the Facebook posts were direct communication that seemed to "fly directly in the face of the court order that says contact [is] prohibited between defendant and Ms. Camp." Therefore, the trial court held that there were sufficient grounds to revoke Perry's suspended sentence. The trial court revoked the entirety of Perry's suspended sentence. This appeal followed.

---

[1] The post uses the phrase "ss." When Camp read the screenshots into evidence, she read that as "screenshot," and Perry did not object.

[2] In addition to the two posts, Samantha Miller replied to a comment on the second post stating "yeah just want this CUNT(S) to know who the fuck they're fucking with. Before something hits them way before covid😊😊." She also replied to her own comment stating "MS-13 😊👹 just like that."

II. ANALYSIS

A. *The trial court did not err by admitting the social media post.*

Perry argues that "the trial court erred in admitting hearsay evidence of a social media post which lacked proper foundation in violation of Ms. Perry's limited rights of confrontation at a revocation hearing." Because we find that the Commonwealth laid a proper foundation and the Facebook posts were not inadmissible hearsay, we affirm.

1. Standard of Review

On appeal, we generally review a trial court's decision to admit evidence at a revocation hearing for an abuse of discretion. *Jenkins v. Commonwealth*, 71 Va. App. 334, 342-43 (2019). However, "[w]hether a defendant's due process rights are violated by the admission of evidence is a question of law, to which we apply a de novo standard of review." *Johnson v. Commonwealth*, 296 Va. 266, 274 (2018) (quoting *Henderson v. Commonwealth*, 285 Va. 318, 329 (2013)). "[I]n conducting our *de novo* analysis, this Court 'is bound by the trial court's findings of historical fact unless "plainly wrong" or without evidence to support them.'" *Cody v. Commonwealth*, 68 Va. App. 638, 656 (2018) (quoting *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (*en banc*)).

2. The admission of the Facebook post did not violate Perry's right to confrontation because it was not inadmissible hearsay.

Because a probation revocation proceeding occurs after a "'criminal prosecution has ended in a conviction,' the defendant 'is not entitled to the "full panoply" of constitutional rights to which he was entitled at trial.'" *Jenkins*, 71 Va. App. 343 (quoting *Henderson*, 285 Va. at 325). "Hearsay is frequently admitted in revocation proceedings." *Henderson*, 285 Va. at 326. "Nevertheless, a defendant has a limited right of confrontation in criminal sentencing and any subsequent revocation proceedings under the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Jenkins*, 71 Va. App. at 343. Hearsay that is testimonial in

nature is subject to the limited confrontation right, and it is only admissible if the "hearing officer specifically finds good cause for not allowing confrontation." *Henderson*, 285 Va. at 326 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)). Thus, for the limited right of confrontation to apply, the Facebook posts must be both hearsay and testimonial.

Because we conclude that the Facebook posts were not hearsay, the limited right of confrontation does not apply. The common law definition of hearsay is "testimony in court . . . of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein." *Campos v. Commonwealth*, 67 Va. App. 690, 704 (2017) (alteration in original) (quoting *Commonwealth v. Swann*, 290 Va. 194, 197 (2015)); *see also* Va. R. Evid. 2:801(c) (defining hearsay). But the rule against hearsay does not exclude "[a] statement offered against a party that is . . . the party's own statement." Va. R. Evid. 2:803(0). Thus, for the statement to be admissible, the Commonwealth must establish that the statement was made by Perry. *See Atkins v. Commonwealth*, 68 Va. App. 1, 8 (2017).

Perry contends that the Commonwealth did not lay a proper foundation or authenticate the Facebook posts.[3] Specifically, she contends the Commonwealth did not establish that Perry authored the posts.

"The measure of the burden of proof with respect to factual questions underlying the admissibility of evidence is proof by a preponderance of the evidence." *Id.* at 9 (quoting *Bloom v. Commonwealth*, 262 Va. 814, 821 (2001)). "Although the type of evidence used to prove the identity of the person making the statement may vary based in part upon the medium used to convey the message, the governing legal standard is the same—proof by a preponderance of direct evidence, circumstantial evidence, or a combination of both." *Id.*

---

[3] We assume without deciding that this argument is properly preserved in compliance with Rule 5A:18 and argued in compliance with Rule 5A:20(e).

Here, the evidence was sufficient, under the applicable "preponderance of the evidence" standard, to conclude that Perry made the statements contained in the Facebook posts. The Facebook account used Samantha Miller, Perry's maiden name, and Camp testified that she was familiar with the Facebook account Perry used. She had viewed it before, and she described it as "very active." There were also photographs of Perry, Perry's daughter, and her family on the account. Furthermore, the post itself contained personal information that could refer only to Perry, Camp, and individuals close to them.

Perry argues that this evidence is insufficient because it is unlike *Atkins*. In *Atkins*, the Commonwealth sought to introduce a social media post and text messages under the party admission exception to the rule against hearsay. *Id.* at 8-9. There, the social media account and text messages were on a passcode protected phone that the defendant admitted was his, and he provided the passcode to law enforcement. *Id.* at 9. The social media account used an email with defendant's name, and the photo in the social media post included an item found in the defendant's bedroom. *Id.* at 9-10. This Court concluded that the evidence "clearly met the baseline foundational requirement." *Id.* at 10.

While the evidence here may not be as strong as the evidence in *Atkins*, it is nevertheless sufficient to prove by a preponderance of the evidence that Perry authored the posts. "[A]uthentication does not set a high barrier to admissibility, and is generally satisfied by any form of proof that supports a finding that it is what it purports to be." *Id.* at 9 (alteration in original) (quoting Charles E. Friend & Kent Sinclair, *The Law of Evidence in Virginia* § 17-1, at 1164 (7th ed. 2012)). The "'completeness of the identification goes to the weight' afforded 'the evidence rather than its admissibility.'" *Id.* (quoting *Armes v. Commonwealth*, 3 Va. App. 189, 193 (1986)). Additionally, the "formal procedures and rules of evidence" are not required in revocation proceedings, and the proceedings are more flexible and relaxed. *Downey v.*

*Commonwealth*, 59 Va. App. 13, 20 (2011). Accordingly, the Commonwealth laid a sufficient foundation to establish Perry authored the posts.

Because the record supports the trial court's finding that Perry was the person who made the statements in the Facebook posts, the posts are admissible as "the party's own statement." Va. R. Evid. 2:803(0). Accordingly, the Facebook posts are not excluded by the rule against hearsay, and they do not implicate the limited right of confrontation available in revocation proceedings. *Henderson*, 285 Va. at 326.

B. *The trial court did not err by finding good cause to revoke Perry's suspended sentence.*

Perry argues that the trial court erred when it found good cause to revoke the entirety of her sentence because the Commonwealth did not present sufficient evidence to show that Perry violated the no contact order. Specifically, she contends the social media posts did not directly or indirectly contact Camp, nor did they instruct anyone to do so. We disagree.

### 1. Standard of Review

"A trial court has broad discretion to revoke a suspended sentence and probation based on Code § 19.2-306, which allows a court to do so 'for any cause deemed by it sufficient.'" *Keselica v. Commonwealth*, 34 Va. App. 31, 35 (2000) (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 86 (1991)). On appeal, "the trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013) (quoting *Davis*, 12 Va. App. at 86).

### 2. Contact

"'Contact,' in pertinent part, means 'an instance of establishing communication with someone.'" *Green v. Commonwealth*, 72 Va. App. 193, 203 (2020) (quoting *Contact*, *Webster's*

*Third New International Dictionary* (2002)).[4] "'Contacts' prohibited by protective orders 'are intentional acts . . . that intentionally pierce the protective barrier between the petitioner and the respondent fashioned by the protective order.'" *Id.* (alteration in original) (quoting *Elliott v. Commonwealth*, 277 Va. 457, 464 (2009)). There is nothing in "the plain meaning of the word [that] limits a 'contact' to a direct one." *Id.* at 204. Nor is there anything to "suggest that the prohibited 'contact' cannot be through a social media platform." *Id.*

We considered a similar situation in *Green*. In *Green*, the victim, the mother of Green's child, sought a preliminary protective order that directed Green to have "no contact of any kind" with the victim. *Id.* at 198. Green took to Twitter and tweeted, "Someone tell my BM [baby mama] she was a bird for me."[5] *Id.* We noted that by stating "*Someone tell* my BM," the message indicated Green's "intent to contact the victim through others—anyone who would do it." *Id.* We held that this indirect contact through social media was sufficient to violate the no contact provisions of the protective order because it "intentionally pierce[d] the protective barrier" fashioned by the protective order. *Id.* at 204-05 (alteration in original) (quoting *Elliott*, 277 Va. at 464).

Here, as in *Green*, Perry made her comments on social media, rather than directly to Camp. Perry claims that the Facebook post, unlike the tweet in *Green*, does not instruct anyone to contact Camp. We disagree. The Facebook post stated, "I hope this gets ss [screenshot] and sent to the right fucking people." Camp testified that "ss" means screenshot. Like the directive in *Green*,

---

[4] *Green* considered contact in the context of a violation of a protective order under Code § 16.1-253.2, whereas this case deals with contact in the context of a revocation proceeding for violating the terms of a court order following a conviction. We recognize that these proceedings are procedurally different and have different burdens of proof. But *Green* interprets and applies the "ordinary meaning" of "contact," *Green*, 72 Va. App. at 203-04, and the context is similar. We find *Green*'s interpretation of "contact" equally applicable to these circumstances.

[5] The victim testified that "'a bird for you' can mean either that someone has 'gone off with the wind' and is 'nothing' or that person is a 'ho.'" *Green*, 72 Va. App. at 198.

this statement reflects Perry's "intent to contact [Camp] through others—anyone who would do it." *Green*, 72 Va. App. at 204. This, in fact, is exactly what happened; someone viewed the post and sent a screenshot to Camp.

Further, Perry's posts used the second person to reference Camp, using "you" and "your," which likewise indicates an intent for Camp to see these posts. Perry's lengthy Facebook posts contained threats directed at Camp and a stated intention that someone convey the message to Camp. Therefore, the evidence was sufficient to demonstrate that Perry violated the court's no contact order. Accordingly, the trial court did not err in finding good cause to revoke Perry's suspended sentence.

III. Conclusion

For the foregoing reasons, we affirm the decision of the trial court.

*Affirmed.*