PRESENT: All the Justices

DILLIRAJ BISTA

                                                  OPINION BY
v. Record No. 230721                       JUSTICE TERESA M. CHAFIN
                                            NOVEMBER 14, 2024

COMMONWEALTH OF VIRGINIA

### FROM THE COURT OF APPEALS OF VIRGINIA

In this case, we consider whether a child's out-of-court statements describing acts of sexual abuse were properly admitted into evidence pursuant to Code § 19.2-268.3. We also consider whether the appellant had a sufficient opportunity to confront and cross-examine the child who made the statements.

Upon review, we conclude that the circuit court did not abuse its discretion when it admitted the statements at issue into evidence during the appellant's trial. We further conclude that the appellant had a sufficient opportunity to confront and cross-examine the child who made the statements when she testified at the appellant's preliminary hearing. Accordingly, we affirm the judgment of the Court of Appeals.

### I. MATERIAL FACTS AND PROCEEDINGS

### A. THE SEXUAL ASSAULT AND INITIAL INVESTIGATION

R.P., the child who made the statements at issue in the present case, has autism spectrum disorder, a condition that impairs her social skills, memory, and ability to communicate. Dilliraj Bista, the appellant, was a close friend of R.P.'s parents. Like R.P.'s parents, Bista had immigrated to the United States from Nepal. R.P. referred to Bista as "Grandpa." When R.P. was 11 years old, Bista stayed with R.P.'s family at their home in Fairfax County for several days while his wife was visiting Nepal. During this stay, Bista abused R.P.

On August 17, 2018, the evening of the assault, R.P.'s mother went upstairs to take a shower around 8:30 p.m. When R.P.'s mother came downstairs about 15 minutes later, she found R.P. and Bista in the living room of the house. R.P. was on her hands and knees on the living room floor, with her shorts and underwear pulled down to her knees. Bista was kneeling behind R.P. R.P.'s mother screamed and took R.P. upstairs.

When R.P.'s parents questioned her about Bista's conduct, she told them that Bista had "touched" and "licked" her "private parts." R.P. also told her parents that Bista "put his private part into [her] private part." Although Bista initially denied that he had committed any misconduct, he eventually told R.P.'s parents that he "licked [R.P.'s] private part." Bista left R.P.'s home later that evening.

R.P.'s family did not report the incident to the police. R.P.'s mother, however, collected the clothing that R.P. wore on the evening of the assault and placed it in a plastic grocery bag. After tying the grocery bag closed, R.P.'s mother stored the clothing and grocery bag in a closet.

On January 29, 2019, R.P. told her teacher that she had been "raped" by a family friend in August. R.P. said that her assailant was a man who looked like a "grandpa." R.P. explained that her mother caught the man "touching her inappropriately" and "kicked him out of the house." R.P.'s allegations were reported to the Fairfax County Sheriff's Office.

At the request of the detective who was assigned to investigate the matter, a social worker conducted a forensic interview of R.P. at the SafeSpot Children's Advocacy Center ("SafeSpot") on February 27, 2019. R.P. described the sexual assault in detail during the interview.

According to R.P., Bista grabbed her by the neck and kissed her when she was sitting in the living room of her home. Bista repeatedly pulled R.P.'s shirt when she tried to run away from him, which caused her to fall. Bista touched R.P.'s private parts, forced R.P. into a "dog"

2

position, and removed her shorts and underwear. Bista used his "flip phone" to record videos of R.P.'s "butt." At some point, Bista "licked" R.P.'s "private parts." R.P. said that Bista's penis "tr[ied] to go in [her] butt," and she clarified that Bista's penis actually penetrated her. R.P. explained that her mother caught Bista performing these acts and kicked him out of the house.

A detective collected the clothing that R.P. wore on the evening of the assault and submitted it for forensic analysis. Bista's DNA was found on the interior "crotch" portion of R.P.'s underwear. However, no semen was found on R.P.'s clothing. When a forensic nurse examined R.P. in June of 2019, the nurse did not observe any injuries to R.P.'s vagina or anus.

## B. THE DISTRICT COURT AND CIRCUIT COURT PROCEEDINGS

### 1. THE PRELIMINARY HEARING

Bista was charged with the forcible sodomy of a child under the age of 13, in violation of Code § 18.2-67.1, and aggravated sexual battery, in violation of Code § 18.2-67.3. The Juvenile and Domestic Relations District Court of Fairfax County (the "district court") held a preliminary hearing concerning these charges on September 5, 2019. The Commonwealth provided Bista with a copy of the video recording of R.P.'s forensic interview on August 15, 2019, three weeks before the preliminary hearing.

Bista did not challenge R.P.'s competency to testify at the preliminary hearing. When testifying about the sexual assault, R.P. explained that Bista initially "touched [her] private parts without taking [her] shorts off." According to R.P., Bista removed her shorts and underwear and licked her "private areas." Bista eventually inserted his penis into R.P.'s vagina and then "right into [her] butt." Bista kept "doing th[is] stuff over and over again," even though R.P. "yelled at [Bista]" and "tried to leave the room several times."

On cross-examination, R.P. explained that she was on her "hands and knees" "sitting like a dog" during the sexual assault. R.P. also confirmed that Bista's penis actually penetrated her, explaining that "first, he put it in my vagina and then he put it into my butt." R.P. clarified that Bista's penis was "in [her] butt" longer than it was in her vagina.

The video recording of the forensic interview was not admitted into evidence during the preliminary hearing. Bista, however, cross-examined R.P. about certain statements that she made during the forensic interview. Although some of these statements were not addressed in the Commonwealth's direct examination of R.P., the Commonwealth did not object to any of Bista's questions.

R.P.'s testimony on cross-examination contradicted some of her statements from the forensic interview. At the preliminary hearing, R.P. testified that Bista did not "pull [her] shirt" during the assault. Rather, R.P. claimed that Bista "prevented [her] from leaving" by "blocking" the entrance to the living room. Additionally, R.P. testified that Bista "left his phone in [a] bag" during the assault.

At the conclusion of the preliminary hearing, the district court certified the charges against Bista to the grand jury. The grand jury indicted Bista for the charged offenses. The grand jury also indicted Bista for an additional charge of rape, in violation of Code § 18.2-61.

2. THE MOTION TO ADMIT R.P.'S STATEMENTS UNDER CODE § 19.2-268.3

Before Bista's trial, the Commonwealth filed a motion to admit R.P.'s statements to her parents, teacher, and the social worker who conducted the forensic interview into evidence pursuant to Code § 19.2-268.3—a statute addressing the admissibility of the out-of-court statements of children who are the victims of specified crimes. The Circuit Court of Fairfax

4

County (the "circuit court") held an evidentiary hearing concerning the motion on February 7, 2020.

At the evidentiary hearing, R.P.'s parents testified about the statements that R.P. made shortly after the assault and the surrounding circumstances. R.P.'s teacher provided similar testimony concerning the statements that R.P. made at school about the sexual assault. R.P.'s parents and teacher also addressed R.P.'s autism spectrum disorder and the manner in which it affected R.P.

The video recording of the forensic interview was admitted into evidence for the purposes of the pending motion and reviewed by the circuit court. The executive director of SafeSpot testified about forensic interviewing techniques and explained that "appropriate interviewing techniques" were followed during R.P.'s forensic interview.

The circuit court granted the Commonwealth's motion, concluding that the statements at issue were admissible under Code § 19.2-268.3. After considering the totality of the circumstances, the circuit court determined that R.P.'s out-of-court statements were supported by "sufficient indicia of reliability."

When assessing the trustworthiness of the statements at issue, the circuit court expressly addressed the factors set forth in Code § 19.2-268.3(B)(1). Among other things, the circuit court noted that: R.P. had "personal knowledge" of the events at issue (i.e., the sexual assault); "extrinsic evidence" established that Bista had an "opportunity to commit the act"; R.P. and her parents had no motive to fabricate the allegations against Bista; and the testimony of R.P.'s parents and teacher was credible. The circuit court observed that R.P. was "mildly autistic," and it acknowledged that there were "some inconsistencies" in R.P.'s description of the sexual

5

assault. The circuit court, however, also noted that R.P. provided a "very detailed recollection" of the assault in the forensic interview.

### 3. THE MOTION CHALLENGING R.P.'S COMPETENCY

Based on R.P.'s autism spectrum disorder and the manner in which the condition affected R.P., Bista filed a motion challenging R.P.'s competency to testify at trial. The circuit court held an evidentiary hearing regarding the motion on February 21, 2020.

During the hearing, R.P. was questioned concerning her ability to comprehend an oath and testify truthfully at trial. At one point, R.P. failed to identify an obviously false statement. R.P. also failed to properly respond to certain questions. R.P. admitted that she lied to her parents and teachers about unrelated matters. Nevertheless, R.P. claimed that she was telling the truth about the sexual assault.

The detective investigating the sexual assault testified that R.P. had disclosed that some of her preliminary hearing testimony was false. Specifically, R.P. admitted that some of her testimony concerning Bista's wife was not true. R.P. also acknowledged that she falsely claimed that she had previously watched pornography on the internet.

R.P.'s father testified that R.P.'s autism spectrum disorder diminished her capacity to answer questions. R.P.'s father explained that R.P. "cannot focus a long time," and that R.P. "will just say things that are [not] true without thinking about it" unless she gets a "break" from questioning.

In light of the testimony provided at the evidentiary hearing, the circuit court concluded that R.P. was not competent to testify at Bista's trial. The circuit court found that R.P. had the capacity to "observe," "recall," and "communicate" events. The circuit court, however, determined that R.P. did not have the capacity to "comprehend the legal significance of an oath,"

6

"distinguish truth from a falsehood," or "understand the questions propounded and make intelligent answers."

4. THE MOTION CHALLENGING THE ADMISSIBILITY OF R.P.'S FORENSIC INTERVIEW STATEMENTS

When Bista filed the motion challenging R.P.'s competency to testify, he also filed a related motion challenging the admissibility of the statements that R.P. made during her forensic interview. Relying on the Confrontation Clause of the Sixth Amendment of the United States Constitution, Bista argued that any testimonial statements that R.P. made during her forensic interview would be inadmissible if R.P. was not subject to cross-examination at trial.

Responding to Bista's motion, the Commonwealth conceded that R.P.'s statements from the forensic interview were likely testimonial hearsay. The Commonwealth, however, maintained that Bista had a sufficient opportunity to cross-examine R.P. about the statements that she made during the forensic interview at the preliminary hearing. As Bista had a prior opportunity to fully cross-examine R.P., the Commonwealth argued that the circuit court could admit the forensic interview statements into evidence at trial even if R.P. was unavailable to testify.

The circuit court denied Bista's motion. Although the circuit court determined that R.P.'s forensic interview statements were testimonial hearsay, the circuit court agreed with the Commonwealth that Bista had a sufficient opportunity to cross-examine R.P. about her forensic interview statements at the preliminary hearing. Therefore, the circuit court concluded that admitting the forensic interview statements into evidence at trial would not violate the Confrontation Clause.

7

5. THE MOTION TO RECONSIDER THE ADMISSIBILITY OF R.P.'S STATEMENTS UNDER CODE § 19.2-268.3

In light of the circuit court's ruling regarding R.P.'s competency, Bista requested that the circuit court reconsider its decision to admit R.P.'s out-of-court statements into evidence. Bista argued that, given R.P.'s limitations, the statements at issue were not "inherently trustworthy" under Code § 19.2-268.3.

The circuit court denied Bista's motion. After reevaluating the factors set forth in Code § 19.2-268.3, the circuit court concluded that the "totality of the circumstances" established that the statements at issue were "inherently trustworthy"—notwithstanding R.P.'s "age," "mental infirmities," and prior "inconsistent statements." The circuit court also explained that the statements were corroborated by: (1) R.P.'s mother's testimony, and (2) the DNA evidence collected from R.P.'s underwear.

6. BISTA'S TRIAL AND POST-CONVICTION MOTION

Bista's trial was held over 8 days in February and March of 2020. At the conclusion of the trial, the jury convicted Bista of forcible sodomy and aggravated sexual battery. The jury acquitted Bista of rape.

Bista subsequently filed a motion to set aside the jury's verdict. Among other things, Bista argued that: (1) R.P.'s out-of-court statements did not meet the standard for admissibility under Code § 19.2-268.3, and (2) the admission of R.P.'s forensic interview statements violated Bista's constitutional right to confront the witnesses against him. The circuit court denied Bista's motion.

The circuit court imposed the sentences recommended by the jury, sentencing Bista to life imprisonment for the forcible sodomy conviction and 20 years of imprisonment for the aggravated sexual battery conviction. Bista timely noted an appeal.

8

C.  THE COURT OF APPEALS PROCEEDINGS

On appeal, Bista argued that the circuit court erred by admitting R.P.'s out-of-court statements into evidence pursuant to Code § 19.2-268.3.  Bista emphasized that the circuit court had determined that R.P. was not competent to testify at trial.

Bista also argued that the circuit court erred by admitting the testimonial statements that R.P. made during her forensic interview into evidence.  As R.P. did not testify at Bista's trial, Bista maintained that he was deprived of his constitutional right to confront the witnesses against him.

A divided three-judge panel of the Court of Appeals affirmed Bista's convictions.  *Bista v. Commonwealth*, 76 Va. App. 184, 197 (2022).  The Court of Appeals subsequently granted Bista's petition for en banc review.

Upon en banc review, the Court of Appeals affirmed Bista's convictions.  *Bista v. Commonwealth*, 78 Va. App. 391, 429 (2023) (*en banc*).  The en banc majority concluded that the circuit court did not abuse its discretion when it admitted R.P.'s out-of-court statements into evidence pursuant to Code § 19.2-268.3.  *Id.*  The majority also concluded that the circuit court's decision to admit R.P.'s forensic interview statements into evidence did not violate the Confrontation Clause.  *Id.*

While the majority recognized that the circuit court determined that R.P. was incompetent to testify at Bista's trial, the majority explained that R.P.'s incompetence did not categorically bar the admission of her out-of-court statements into evidence under Code § 19.2-268.3.  *Id.* at 414.  The majority held that, in light of the circumstances presented in this case, the circuit court did not abuse its discretion when it concluded that R.P.'s out-of-court statements were

9

"inherently trustworthy." *Id.* at 418. Additionally, the majority concluded that R.P.'s out-of-court statements were supported by sufficient corroborative evidence. *Id.* at 420.

Assuming that R.P.'s forensic interview statements were testimonial, the majority concluded that Bista had a constitutionally adequate opportunity to cross-examine R.P. about her forensic interview statements at the preliminary hearing. *Id.* at 422. The majority explained that R.P.'s forensic interview and her preliminary hearing testimony addressed the same allegations of sexual abuse. *Id.* Moreover, the majority observed that Bista actually cross-examined R.P. about specific statements that she made during the forensic interview without objection from the Commonwealth or limitation by the district court. *Id.* at 422-23.

A concurring opinion focused on the nature of the forensic interview statements. *See id.* at 431-32. Although the concurrence found "no fault" with the majority's substantive analysis, the concurrence concluded that the statements that R.P. made during her forensic interview were nontestimonial. *Id.* at 429-30.

The dissent agreed that the circuit court did not abuse its discretion when it admitted R.P.'s out-of-court statements into evidence pursuant to Code § 19.2-268.3. *Id.* at 433. The dissent, however, maintained that Bista did not have a sufficient opportunity to cross-examine R.P. about her testimonial forensic interview statements at the preliminary hearing. *Id.* at 431-33.

## II. ANALYSIS

Bista contends that the Court of Appeals erred by concluding that the circuit court did not abuse its discretion when it admitted R.P.'s out-of-court statements into evidence pursuant to Code § 19.2-268.3. Bista also maintains that the Court of Appeals erred by concluding that the

10

circuit court did not violate the Confrontation Clause when it admitted R.P.'s testimonial forensic interview statements into evidence. We disagree with both of Bista's arguments.

A. THE ADMISSIBILITY OF R.P.'S STATEMENTS UNDER CODE § 19.2-268.3

Code § 19.2-268.3 provides a hearsay exception for the out-of-court statements of children who are the victims of certain crimes. Specifically, this exception applies to the out-of-court statements of a child who is "under 13 years of age at the time of [a] trial or hearing" that describe "any act directed against the child relating to" one of several enumerated criminal offenses, including violations of Code §§ 18.2-67.1 and 18.2-67.3. *See* Code § 19.2-268.3(A) and (B).

Before applying the hearsay exception set forth in Code § 19.2-268.3, a trial court must conduct a pretrial hearing to evaluate the reliability and trustworthiness of the statements at issue. *See* Code § 19.2-268.3(B). A trial court may only admit the statements at issue into evidence if it determines that the "time, content, and totality of circumstances surrounding the statement[s] provide sufficient indicia of reliability" to render the statements "inherently trustworthy." *See* Code § 19.2-268.3(B)(1).

When determining whether a statement is "inherently trustworthy," a trial court "may consider" the following six factors listed in Code § 19.2-268.3(B)(1):

> a. The child's personal knowledge of the event;
>
> b. The age, maturity, and mental state of the child;
>
> c. The credibility of the person testifying about the statement;
>
> d. Any apparent motive the child may have to falsify or distort the event, including bias or coercion;
>
> e. Whether the child was suffering pain or distress when making the statement; and

11

f. Whether extrinsic evidence exists to show the defendant's
opportunity to commit the act[.]

*See* Code § 19.2-268.3(B)(1)(a)-(f). This list of factors is nonexclusive—Code § 19.2-268.3 expressly states that these factors are merely "among" those that a trial court may consider when evaluating the trustworthiness of a child's statement. *See* Code § 19.2-268.3(B)(1).

The child who made the statements at issue must either: (1) testify at the trial or hearing, or (2) be declared unavailable as a witness. *See* Code § 19.2-268.3(B)(2)(a)-(b). When a child is declared unavailable and does not testify at the trial or hearing, the child's statements may only be admitted into evidence "if there is corroborative evidence of the act relating to" the pertinent criminal offense. Code § 19.2-268.3(B)(2)(b).

Focusing on the circuit court's determination that R.P. was not competent to testify at trial, Bista argues that the circuit court erred by concluding that R.P.'s out-of-court statements were "inherently trustworthy" under Code § 19.2-268.3. Bista stresses that the circuit court determined that R.P. could not understand the difference between truthful and untruthful statements. Given this determination, Bista maintains that R.P.'s statements could not be considered "inherently trustworthy." Furthermore, Bista contends that R.P.'s statements were not supported by sufficient corroborative evidence to satisfy the requirements of Code § 19.2-268.3.

When reviewing a trial court's decision to admit or exclude evidence, we apply an abuse of discretion standard. *See Commonwealth v. Swann*, 290 Va. 194, 197 (2015). In this context, "we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." *Kenner v. Commonwealth*, 299 Va. 414, 423 (2021) (quoting *Carter v. Commonwealth*, 293 Va. 537, 543 (2017)). "[M]atters regarding the admissibility of evidence, including underlying factual issues, are solely within the province of a

12

trial court." *Bloom v. Commonwealth*, 262 Va. 814, 821 (2001). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Swann*, 290 Va. at 197 (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

Upon review, we conclude that the circuit court did not abuse its discretion when it admitted R.P.'s out-of-court statements into evidence pursuant to Code § 19.2-268.3. We recognize that the circuit court determined that R.P. was incompetent to testify at Bista's trial. A child's incompetency to testify, however, does not categorically preclude the admissibility of the child's out-of-court statements under Code § 19.2-268.3. The determination of whether a child is competent to testify and the determination of whether the child's out-of-court statements should be admitted into evidence pursuant to Code § 19.2-268.3 are distinct issues.

In general, "[a] court may declare a person incompetent to testify if the court finds that the person does not have sufficient physical or mental capacity to testify truthfully, accurately, or understandably." Va. R. Evid. 2:601(b). We have explained that a "child is competent to testify if he or she possesses the capacity to observe, recollect, communicate events, and intelligently frame answers to the questions asked of him or her with a consciousness of a duty to speak the truth." *Greenway v. Commonwealth*, 254 Va. 147, 153 (1997). When assessing a child's competency, a trial court "must consider the child's age, his intelligence or lack of intelligence, and his sense of moral and legal responsibility." *Id.* (quoting *Hepler v. Hepler*, 195 Va. 611, 619 (1954)).

In contrast, the admissibility of a child's out-of-court statements under Code § 19.2-268.3 is governed by a specific set of statutory requirements that focus on the reliability and inherent trustworthiness of the statements themselves. A trial court may consider the "age, maturity, and mental state of the child" when assessing the trustworthiness of the statements at issue. *See*

Code § 19.2-268.3(B)(1)(b). The trial court, however, must consider many other circumstances in this particular context. *See* Code § 19.2-268.3(B)(1)(a)-(f). Significantly, Code § 19.2-268.3 does not expressly predicate admissibility upon a child's competency to testify. To the contrary, the statute anticipates that a child's out-of-court statements may be admitted into evidence even when the child is unavailable to testify at trial. *See* Code § 19.2-268.3(B)(2)(b) (requiring corroborative evidence under these circumstances).

Undoubtedly, a child's mental condition is an important factor for a trial court to consider when assessing both the child's competency to testify and the admissibility of the child's out-of-court statements under Code § 19.2-268.3. These determinations, however, are ultimately based on the consideration of different legal standards. Accordingly, a trial court may reach differing conclusions regarding a child's competency to testify and the trustworthiness of the child's out-of-court statements. After considering the totality of the circumstances surrounding a child's out-of-court statements—as required by Code § 19.2-268.3(B)(1)—a trial court may determine that the statements at issue are "inherently trustworthy" in a case where the child who made the statements is not competent to testify at trial.

The circuit court did not abuse its discretion when it reached such a conclusion in the present case. After carefully weighing the factors set forth in Code § 19.2-268.3(B)(1) on two separate occasions, the circuit court concluded that R.P.'s out-of-court statements were "inherently trustworthy." The record supports this conclusion.

Extrinsic evidence established that Bista had an "opportunity to commit" the sexual assault. *See* Code § 19.2-268.3(B)(1)(f). On the evening of the sexual assault, R.P.'s mother saw Bista kneeling behind R.P. while R.P. was on her hands and knees on the living room floor,

14

with her shorts and underwear pulled down to her knees. Moreover, Bista eventually admitted that he sexually assaulted R.P., telling R.P.'s parents that he "licked [R.P.'s] private part."

As the victim of the sexual assault, R.P. had "personal knowledge" of the events underlying Bista's charges. *See* Code § 19.2-268.3(B)(1)(a). R.P. described the assault in detail on several different occasions. While there were inconsistencies in R.P.'s description of certain details, R.P.'s description of the sexual assault was largely consistent.

The evidence presented in this case did not establish that R.P. had any motive to fabricate the allegations against Bista. *See* Code § 19.2-268.3(B)(1)(d). R.P. and her family had a close relationship with Bista, to the extent that R.P. referred to Bista as "Grandpa." Given that R.P.'s family had invited Bista to stay at their home for several days while his wife visited Nepal, there was no apparent animosity between Bista and R.P.'s family at the time of the assault.

As previously explained, R.P.'s inability to testify at Bista's trial did not automatically render her out-of-court statements untrustworthy under Code § 19.2-268.3. The circuit court considered R.P.'s "age, maturity, and mental state" when it assessed the trustworthiness of the statements at issue. *See* Code § 19.2-268.3(B)(1)(b). Although the circuit court acknowledged that R.P. was "mildly autistic" and that there were inconsistencies in her descriptions of certain aspects of the sexual assault, the circuit court concluded that R.P.'s out-of-court statements were "inherently trustworthy" in light of the "totality of the circumstances" presented in this case. We hold that the circuit court did not abuse its discretion when it reached this conclusion.

Furthermore, we conclude that R.P.'s out-of-court statements were supported by enough corroborative evidence to satisfy the requirements of Code § 19.2-268.3. In general, the term "corroborative evidence" refers to evidence that independently supports an essential allegation to some degree. *See, e.g.*, *Commonwealth v. Proffitt*, 292 Va. 626, 638 (2016). Corroborative

15

evidence "strengthens or confirms what other evidence shows." Black's Law Dictionary 697 (12th ed. 2024); *see also Penn v. Manns*, 221 Va. 88, 93 (1980) ("Corroborating evidence is such evidence as tends to confirm and strengthen the testimony of the witness sought to be corroborated." (quoting *Brooks v. Worthington*, 206 Va. 352, 357 (1965))).

When viewed alone, corroborative evidence does not need to "be sufficient to support a verdict" or "remove[] all doubt" concerning a disputed issue. *See Penn*, 221 Va. at 93 (quoting *Brooks*, 206 Va. at 357). "The amount of corroboration necessary will vary from case to case, and it need not be conclusive." *Id.* "Whether or not corroboration exists and the degree and quality required are to be determined by the facts and circumstances of the particular case." *Seaboard Citizens Nat'l Bank v. Revere*, 209 Va. 684, 690 (1969) (quoting *Nicholson v. Shockey*, 192 Va. 270, 283 (1951)).

In this case, R.P.'s out-of-court statements were supported by corroborative evidence from several different sources. As previously noted, R.P.'s mother testified that she saw Bista kneeling behind R.P. on the evening of the sexual assault, while R.P. was on her hands and knees with her shorts and underwear pulled below her knees. Moreover, both of R.P.'s parents testified that Bista admitted that he "licked [R.P.'s] private part." Additionally, forensic analysis revealed the presence of Bista's DNA on the interior "crotch" portion of the underwear that R.P. was wearing on the night of the assault. Collectively, this evidence sufficiently corroborated R.P.'s out-of-court statements for the purposes of Code § 19.2-268.3.

For the reasons stated, we conclude that the circuit court did not abuse its discretion when it determined that R.P.'s out-of-court statements were admissible under Code § 19.2-268.3. Therefore, the Court of Appeals did not err when it upheld the circuit court's decision to admit the statements at issue into evidence under that statute.

16

B. BISTA'S CONSTITUTIONAL ARGUMENT

Bista contends that the circuit court violated the Confrontation Clause when it admitted the statements that R.P. made during her forensic interview into evidence, notwithstanding the potential admissibility of these statements under Code § 19.2-268.3. Bista's constitutional argument is subject to de novo review. *See Cortez-Rivas v. Commonwealth*, 300 Va. 442, 444 (2022) ("This Court reviews de novo whether the admission of evidence violates a defendant's confrontation right." (quoting *Logan v. Commonwealth*, 299 Va. 741, 745 (2021))).

The Confrontation Clause of the Sixth Amendment of the United States Constitution states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." This provision prohibits the admission of testimonial statements from a witness who does not testify at trial—unless the witness is "unavailable to testify," and the defendant "had a prior opportunity for cross-examination." *See, e.g.*, *Crawford v. Washington*, 541 U.S. 36, 54 (2004).

Bista acknowledges that he had a prior opportunity to cross-examine R.P. when she testified at his preliminary hearing. Bista, however, argues that he never had a sufficient opportunity to cross-examine R.P. about her forensic interview statements. We disagree.

Assuming that R.P.'s forensic interview statements were "testimonial" in nature,[*] we conclude that Bista had a constitutionally sufficient opportunity to cross-examine R.P. at the

---

[*] "The doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Swann*, 290 Va. at 196 (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010)). This doctrine is of particular importance in cases involving constitutional issues. *See id.* ("A fundamental and longstanding precept of this doctrine is that 'unnecessary adjudication of a constitutional issue' should be avoided." (quoting *Bell v. Commonwealth*, 264 Va. 172, 203 (2002))).

We conclude that the "best and narrowest" disposition of this appeal is achieved through the determination that Bista had a constitutionally sufficient opportunity to cross-examine R.P. about her forensic interview statements at the preliminary hearing, based on the particular

17

preliminary hearing. At the preliminary hearing, Bista cross-examined R.P. about the same sexual assault that she addressed in the forensic interview. Moreover, Bista actually addressed the forensic interview during the cross-examination, questioning R.P. about specific statements that she made during the forensic interview.

Bista's cross-examination of R.P. at the preliminary hearing was extensive. The Commonwealth's direct examination of R.P. only covered 8 pages of the preliminary hearing transcript. Bista's cross-examination of R.P. was much more comprehensive, spanning 37 pages of the preliminary hearing transcript. During the cross-examination, Bista asked R.P. over 125 questions about the sexual assault and the surrounding circumstances—the same subject matter that was addressed during R.P.'s forensic interview.

Although the video recording of the forensic interview was not admitted into evidence at the preliminary hearing, Bista asked R.P. several questions about specific statements that she made during the forensic interview. In the forensic interview, R.P. claimed that Bista prevented her from leaving the living room on the night of the sexual assault by repeatedly pulling her shirt. R.P. also claimed that Bista used his "flip phone" to record videos during the sexual assault. The Commonwealth did not address these statements during R.P.'s direct examination. On cross-examination, however, Bista's attorney expressly asked R.P. whether Bista "pull[ed] on her shirt" or "any other part of [her] clothing," and whether Bista used his phone to "take pictures or videos" during the sexual assault.

Significantly, the Commonwealth did not object to *any* of the questions that Bista asked R.P. on cross-examination—including those that addressed statements from R.P.'s forensic

---

circumstances presented in this case. Therefore, we express no opinion regarding whether R.P.'s forensic interview statements were, in fact, testimonial.

18

interview.  The preliminary hearing transcript shows that Bista was permitted to freely cross-examine R.P. without limitation about a variety of relevant topics.

Bista maintains that his cross-examination of R.P. was generally ineffective because, at the time of the preliminary hearing:  (1) Bista was not charged with rape; (2) discovery was incomplete; and (3) Bista was unaware of some statements that R.P. made to her parents and teacher.  Bista also emphasizes that R.P. admitted that she lied at the preliminary hearing regarding certain facts, and that R.P. was eventually declared incompetent to testify based on the effects of her autism spectrum disorder.  Therefore, Bista asserts that the prior cross-examination at the preliminary hearing was "meaningless."

In short, these circumstances did not deprive Bista of a constitutionally sufficient opportunity to cross-examine R.P. about her forensic interview statements.  In this case, Bista actually cross-examined R.P. about specific statements that she made in the forensic interview at the preliminary hearing.  While Bista argues that the cross-examination was "meaningless," Bista did not challenge R.P.'s competency to testify at any point during the preliminary hearing.  Rather, Bista thoroughly cross-examined R.P. about the sexual assault and the surrounding circumstances.

Although Bista may have been able to cross-examine R.P. in even more detail after he learned additional facts later in the proceedings, the cross-examination that occurred at the preliminary hearing was not constitutionally infirm.  "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)).

19

We recognize that in some scenarios a defendant may not have a sufficient opportunity to address certain statements when cross-examining a witness during a preliminary hearing. Bista could not have cross-examined R.P. about her forensic interview statements at the preliminary hearing if he had not received a copy of the video recording of the forensic interview before the hearing was held. Clearly, Bista could not have cross-examined R.P. about her forensic interview statements if he did not know what R.P. said during the interview. Likewise, Bista could not have cross-examined R.P. about her forensic interview statements if the district court limited his ability to address the matter, either sua sponte or after sustaining an objection from the Commonwealth.

In the present case, however, Bista received a copy of the video recording of R.P.'s forensic interview three weeks before the preliminary hearing was held in the district court. Bista then extensively cross-examined R.P. about the sexual assault that was addressed in the forensic interview at the preliminary hearing, asking questions about specific statements from the interview itself. The Commonwealth did not object to the questions addressing R.P.'s forensic interview statements, and the district court did not limit Bista's ability to cross-examine R.P. about the forensic interview. The decision to refrain from asking R.P. additional questions about the forensic interview was made by Bista alone.

Under these circumstances, we conclude that Bista had a constitutionally sufficient opportunity to cross-examine R.P. about her forensic interview statements. Accordingly, the Court of Appeals did not err when it affirmed the circuit court's decision to admit the statements from the forensic interview into evidence at Bista's trial.

### III.  CONCLUSION

For the reasons stated, we affirm the judgment of the Court of Appeals.

20

*Affirmed.*